IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HALLWOOD PLAZA, INC. , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-589C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

Attorneys for Defendant

## TABLE OF CONTENTS

STATEMENT OF THE ISSUE .......... 1

STATEMENT OF THE CASE .......... 2

I. Nature Of The Case .......... 2

II. Statement Of Facts .......... 2

SUMMARY OF THE ARGUMENT .......... 4

ARGUMENT .......... 5

I. Summary Judgment Is Appropriate Here .......... 5

II. The Contract's Plain Meaning Required Hallwood Include All Costs Of Providing The Warm Lit Shell In Its Original Cost Proposal .......... 6

A. By Requiring Hallwood To Provide All Buildilng Operating Systems As Part Of The Base Building, The Lease Explicitly Precludes A Finding That Hallwood Is Entitled To Additional Compensation For This Work .......... 7

B. Hallwood's Interpretation Of The Lease Is Unreasonable Because It Ignores The Plain Meaning Of Several Express Provisions .......... 10

II. Hallwood's Failure TO Understand The Requirements Of Leasing Space For Office Use, Instead Of Retail Use Is An Error of Business Judgment That Is Not A Basis For Additional Compensation .......... 11

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 6

Blake Construction Co., Inc. v. United States,
28 Fed. Cl. 672 (1993) .......... 10

Boehm v. United Statse,
22 Cl. Ct. 511 (1983) .......... 10

Bristol Myers Squibb Co. v. United States,
48 Fed. Cl. 250 (2000) .......... 6

Bromley Contracting v. United States,
794 F.3d 699 (Fed. Cir. 1986). .......... 12

CTA Inc. v. United States
44 Fed. Cl. 684 (1999) .......... 12

C.W. Over & Sons, Inc. v. United States,
44 Fed. Cl. 18 (1999) .......... 12

Frotec Constructors v. United States,
760 F.2d 1288 (1985) .......... 10

Gresham, Smith & Partners v. United States
24 Cl. Ct. 796 (1991) .......... 6, 7

Harris v. Dep't of Veterans Affairs,
142 F.3d 1463 (Fed. Cir. 1998) .......... 7

International Business Inv., Inc. v. United States,
17 Cl.Ct. 122 (1989) .......... 10

Liebherr Crane Corp. v. United States,
810 F.2d 1153 (Fed. Cir. 1987) .......... 13

Matsushita Elec. Indus. v. Zenith Radio Corp.,
475 U.S. 574 (1986) .......... 6

Mays v. United States Postal Serv.,
995 F.2d 1056 (Fed. Cir. 1993) .......... 5

P.J. Maffei Bldg. Wrecking v. United States,
732 F.2d 913 (Fed. Cir. 1984) ........................................................................ 5

Triax Pacific Inc. v. West,
130 F.3d 1469 (Fed. Cir. 1997) ...................................................................... 6

United States v. Hamilton Enters., Inc..
711 F.2d 1038 (Fed. Cir. 1983) .................................................................... 13

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed. Cir. 1983) .................................................................... 10

Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.,
103 F.3d 1571 (Fed. Cir. 1997) ...................................................................... 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HALLWOOD PLAZA, INC. , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-589C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant summary judgment in favor of defendant and deny plaintiff's claim for damages. There are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's complaint, the following brief, the statement of uncontroverted facts, and the appendix supporting the statement of uncontroverted facts.

**STATEMENT OF THE ISSUES**

1. Whether plaintiff is entitled to an equitable adjustment for the cost of work required by the lease term governing the base shell building.

2. Whether plaintiff's failure to understand the scope of work to provide an adequate shell building for a public agency office constitutes a unilateral mistake that entitles plaintiff to an equitable adjustment.

# STATEMENT OF THE CASE

## I. Nature Of The Case

This action concerns a lease between the General Services Administration ("GSA") and Hallwood Plaza, Inc. ("Hallwood"), for a Social Security Administration ("SSA") office in Flint, Michigan. The lease called for the building owner to provide a "warm lit shell" building to which specific tenant improvements were to be made. A "warm lit shell" means a finished building without custom features for a specific tenant.

Hallwood challenges the October 13, 2005 contracting officer's final decision which denied its claim for an equitable adjustment for additional tenant improvement costs. The basis for the contracting officer's denial of the claim was the fact that the requested payments were for items that were part of Hallwood's responsibility to provide a shell building, and did not constitute tenant improvement costs. The solicitation for offers ("SFO") clearly differentiated between the requirements of the shell building and any additional requirements GSA might make that would constitute tenant improvement ("TI") costs. The SFO also provided performance standards for each of the shell building requirements, including climate control, lighting, janitorial services, among others. In making its cost proposals to the GSA, Hallwood failed to understand fully the scope of work required by the SFO for the shell building consequently did not include the full costs of the work in its original cost estimate.

## II. Statement Of Facts

For our complete statement of facts, we rely upon our proposed findings of uncontroverted facts ("DPFUF"). For the Court's convenience, we provide the

following synopsis here. On February 23, 2005, GSA and Hallwood executed lease number GS-05B-17564. DPFUF ¶ 18. The award was based on Hallwood's proposal in response to the SFO which provided that the lessor's original bid would provide GSA with a "warm lit shell" including basic electrical and mechanical systems, operational restrooms, central heating, ventilation and air conditioning systems installed and operational at the standards specified in the SFO. DPFUF ¶¶ 2, 10, 11.

The SFO also contemplated that GSA would request additional tenant improvements to the space, for which the lessor would be entitled to additional compensation. DPFUF ¶ 11. The SFO clearly stated that GSA would not pay tenant improvement costs for items that constituted a base building cost. DPFUF ¶ 12.

Subsequent to execution of the lease, GSA provided Hallwood with the "SSA Special Requirements," which constituted GSA's requested tenant improvements, and Hallwood responded with a cost proposal setting out its price to provide those improvements. Hallwood's final proposal of $232,452.15 was accepted by the Government in the Notice to Proceed issued on February 28, 2005.

On March 16, 2005, the parties held a pre-construction meeting, at which additional work was requested by the Government and agreed to by Hallwood. DPFUF ¶¶ 19-20. Thirteen additional items were incorporated into the tenant improvement cost for the lease through Supplemental Lease Agreement number 2. DPFUF ¶ 25. In all, a total of $98,228,90 of additional costs were agreed to by the parties. Id.

Hallwood provided the warm lit shell, and all tenant improvements as required

by the SFO and lease terms. DPFUF ¶ 26. Hallwood now seeks additional compensation because it did not understand that providing the warm lit shell for office space involved different considerations and more expensive equipment than the retail space with which Hallwood was most familiar. DPFUF ¶ 27. In its certified claim to the contracting officer, Hallwood admitted that it did not interpret certain features of the lease, and were therefore not included in its original bid. DPFUF ¶ 7.

The contracting officer denied the claim in its entirety because the work for which Hallwood sought additional compensation was required by the SFO as part of the shell building, and Hallwood should have included the full costs of completing that work in its original cost proposal. DPFUF ¶ 33.

Hallwood now alleges that GSA breached the contract by requiring Hallwood to perform additional work without compensation.

## SUMMARY OF ARGUMENT

This case presents an issue of contract interpretation, which is appropriate for summary judgment. The plain terms of the contract unambiguously required Hallwood to provide GSA with the "warm lit shell" including all base building systems to the standards provided in the SFO. The ordinary meaning of these terms required Hallwood to install whatever equipment was necessary to meet the standards provided in the SFO, as part of the base building requirements, not as additional work. Therefore, Hallwood is not entitled to additional compensation for any of the items of purportedly additional work for which it seeks reimbursement. Each of the items was included as base building work required by the SFO and is not

compensable as additional tenant improvement costs. Hallwood expects additional compensation not for additional work beyond the scope of what was plainly required by the SFO, but rather for work that Hallwood failed to understand was required to provide the warm lit shell prescribed by the SFO. Hallwood conceded in its certified claim to the contracting officer that its experience was with retail leases, and that it did not understand what was necessary to meet the requirements for office space. Thus, by its own admission, Hallwood failed to appreciate the scope of work required to provide the "warm-lit shell" required by the SFO. As a result, Hallwood did not properly account for all the costs it should have expected to encounter in providing the base building and tenant improvements. For example, the existing heating and air conditioning system in the space, was apparently sufficient for that space when previously utilized as retail space, but was not sufficient to meet the code requirements for the SSA office for which GSA contracted. This is due to the greater climate control challenges posed by a building containing large amounts of computer equipment, and Hallwood failed to understand this distinction. Hallwood's misunderstanding is, at best, a mistake in business judgment. This mistake caused Halalwood to underbid GSA's lease, but it does not provide a legal basis for additional compensation and Hallwood's claim should be dismissed.

## ARGUMENT

### I. Summary Judgment Is Appropriate Here

Issues of contract interpretation, such as presented here, present questions of law that are uniquely appropriate for summary judgment. Mays v. United States

Postal Serv., 995 F.2d 1056, 1059 (Fed. Cir. 1993); P.J. Maffei Bldg. Wrecking v. United States, 732 F.2d 913, 916-17 (Fed. Cir. 1984). If the language of the contract is unambiguous, the Court must accept its plain meaning. Triax Pacific, Inc. v. West, 130 F.3d 1469, 1473 (Fed. Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc., 103 F.3d 1571 (Fed. Cir. 1997), cert. denied, 522 U.S. 818 (1997).

Summary disposition may be granted where there is no genuine dispute over a material fact. Anderson, 477 U.S. at 248. A material fact is one that might affect the outcome of the suit under the governing substantive law. Id. Any doubt as to factual issues must be resolved in favor of the party opposing summary judgment to whom the benefit of all presumptions and inferences run. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Here, the material facts are not in dispute. The Court should interpret the contract and rule that Hallwood cannot, as a matter of law, establish any claim for additional compensation.

## II. The Contract's Plain Meaning Required Hallwood Include All Costs of Providing The Warm Lit Shell In Its Original Cost Proposal

The sole dispute here is whether the work for which Hallwood now seeks additional compensation was included in the base building requirements of the SFO. This dispute simply requires the Court to interpret the contract, which is appropriate

for resolution upon summary judgment. Bristol-Myers Squibb Co. v. United States, 48 Fed. Cl. 350, 355 (2000). In interpreting the contract, the Court must first determine whether an ambiguity exists in the contract. Gresham, Smith & Partners v. United States, 24 Cl. Ct. 796, 802 (1991).

A contract term is unambiguous when there is only one reasonable interpretation. Bristol-Myers Squibb Co., 48 Fed. Cl. at 355. In interpreting the language of a contract, its terms must be accorded their plain and ordinary meaning. Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998). When the contract language is unambiguous, the Court's inquiry is at an end, and the plain language of the contract is controlling. Bristol-Myers Squibb Co., 48 Fed. Cl. at 355.

A. By Requiring Hallwood to Provide All Building Operating Systems As Part Of The Base Building, The Lease Explicitly Precludes A Finding That Hallwood Is Entitled To Additional Compensation For This Work

The SFO plainly contained each of the following provisions:

- The SFO required the lessor to provide a “base building structure and building enclosure components (windows, with exterior finishes) are complete. (No window treatments, i.e. blinds, draperies, etc.).” DPFUF ¶ 6.

- The SFO provided that “The base building electrical and mechanical systems are complete and functional (central fire alarm, chiller plant, cooling towers, etc.).” SFO section 1.9(B)(1)(c). DPFUF ¶ 7.

- The SFO required “a designated connection point to the central fire alarm system, for extension to tenant demised area(s). SFO Section 1.9(B)(1)(c).

- Among other requirements, the tenant areas section of the warm lit

shell required

> A full installed 2x2 foot suspended acoustical ceiling, with 2x2 parabolic fluorescent (or other building standard such as 2'0" x 4'0") fixtures installed in the ceiling grid for an open office plan at the rate of 1 fixture per 80 BOMA office usable (100 rentable) square feet, is provided.

And,

> Central heating, ventilation and air conditioning systems are installed and operational, including as appropriate, main and branch lines, VAV boxes, dampers, flex ducts and diffusers, for an open office layout. Conditioned air through medium pressure ductwork at a rate of.75 cfm/square foot of BOMA office area is provided.

DPFUF ¶ 9.

- As part of providing the warm lit shell, the SFO further stated:

> All Offeror's administrative, overhead, design costs, and other associated project fees necessary to prepare construction documents to complete all tenant improvements contemplated by the Government shall be included as part of the shell base rental rate. It is the successful Offeror's responsibility to prepare all documentation (working drawings, etc.) required to receive construction permits.

DPFUF ¶ 10.

- The Tenant Improvement Allowance was defined in the SFO as "all alterations for the Government demised area over and above the warm lit shell buildout." DPFUF ¶ 11.

- Under the terms of the SFO,

> The Tenant Improvement Allowance shall include all the Offeror's administrative costs, general contractor fees, subcontractor's profits and overhead costs, Offeror's profit and overhead, design costs, and other associated project fees necessary to prepare construction documents to complete the Tenant Improvements. It is the successful Offeror's responsibility to prepare all documentation (working drawings, etc.) required to

> receive construction permits. NO COSTS ASSOCIATED WITH THE BUILDING SHELL SHALL BE INCLUDED IN THE TENANT IMPROVEMENT PRICING.

DPFUF ¶ 12.

Contrary to this plain language, Hallwood contends that the following work that it performed was the result of changes to the lease, rather than work that was within the scope of the SFO. Compl. ¶¶ 12-13. Specifically, Hallwood contends that the following work that it performed constituted additional work not included in the SFO:

| | |
|---|---|
| $ 1,200 | Rear entrance door replacement; |
| $22,700 | Ceiling demolition work and installation of new drop ceiling; |
| $ 6,400 | Replace electrical light fixtures; |
| $55,000 | Complete new duct work for individual zone control system; |
| $ 4,000 | Fire alarm system, including pull stations and strobes; |
| $20,000 | Additional drawings required by the city of Flint government for permits; |
| $ 7,600 | Roofing, new electrical supply to HVAC unit at front of building; |
| $11,000 | Electrical system deficiencies, moving transformer; |
| $10,000.26 | Extra work requested by GSA Inspector Dan Fenner; |
| $18,340 | Additional work for city requirement as a result of changes requested by GSA; |
| $15,069.60 | Contract administration costs at 10 percent of costs of work. |

DPFUF ¶¶ 22, 26.

Hallwood's claim simply ignores the SFO's plain language, which, as set out above, unambiguously required the successful offeror to provide these items as part of the warm lit shell and included in the base rent. DPFUF ¶¶ 3-12.

The SFO clearly stipulates the scope of work to be performed: to provide a warm lit shell including the base building requirements and tenant area requirements. Additionally, the scope of work required Hallwood to make whatever Tenant

Improvements were requested by the GSA. The language makes clear, however, that no costs associated with the building shell are to be included in the tenant improvement pricing. DPFUF ¶ 12. Therefore, it was Hallwood's responsibility to include all costs of providing the building shell requirements, including the base building systems in its original bid, rather than trying to make up costs by characterizing work as a tenant improvement.

The only reasonable interpretation of the contract is that if something is described as part of the base building requirements, then the cost of providing it can only be paid through the original lease price. Hallwood cannot now ignore the explicit terms of the lease to create entitlement to additional payment because it made a mistake in its original bid.

B. Hallwood's Interpretation Of The Lease Is Unreasonable Because It Ignores The Plain Meaning Of Several Express Provisions

"The law is clear that when interpreting the language of a contract, a court must give reasonable meaning to all parts of the contract and not render portions of the contract meaningless." Blake Construction Company, Inc. v. United States, 28 Fed.Cl. 672, 686, citing Frotec Constructors v. U.S., 760 F.2d 1288, 1292 (1985); U.S. v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed.Cir.1983). The court "should reject any interpretation which would render portions of the contract meaningless, useless, ineffective, or superfluous." Kiewit/Tulsa-Houston v. United States, citing Boehm v. United States, 22 Cl. Ct. 511, 516 (1991); Hol-Gar, 351 F.2d at 979. Furthermore, a contract is not ambiguous if there can be only one reasonable interpretation of the contract. International Business Inv., Inc. v. United

States, 17 Cl. Ct. 122, 125 (1989), aff'd, 895 F.2d 1421 (Fed. Cir. 1990)(Table).

Accordingly, the contract at issue must be read to give meaning to all of its parts. It is apparent that such a reading can lead to only one logical interpretation.

The interpretation which Hallwood suggests, that work can be considered “additional” even if it is required by the express terms of the SFO, lacks merit, because such an interpretation renders meaningless the numerous provisions of the lease that state that the base building systems are to be included in the base rent, not as tenant improvements. This designation is explicit in the lease that the HVAC system to be treated as a requirement of the base building, and did not constitute a tenant improvement for which additional compensation would be paid. Therefore, if the Court were to conclude that Hallwood is entitled to additional compensation for the cost of installing the HVAC system, and the attendant duct work, the Court would be reading out of the contract the Government's instructions in Section 1.9(B)(1)(c) stating that “Central heating, ventilation and air conditioning systems are installed and operational . . . Conditioned air through medium pressure ductwork at a rate of .75 cfm/square foot of BOMA office area is provided.”

It is noteworthy that Hallwood does not allege any specific change order created, caused, or instigated any of the work for which it claims additional compensation. The only additional work performed by Hallwood was done pursuant to Supplemental Lease Agreement number 2. DPFUF ¶ 25. The only HVAC work specified there was to provide a dedicated system to cool the computer room, and it is undisputed that Hallwood was compensated $4,680 for that additional work. Id.

II. Hallwood’s Failure To Understand The Requirements Of Leasing Space For

Office Use, Instead Of Retail Use Is An Error Of Business Judgment That Is Not A Basis For Additional Compensation

Although not specifically raised in the complaint, it is apparent that the true basis for Hallwood's request for additional compensation is Hallwood's failure to understand the nature of a lease for commercial office space, as opposed to retail space with which Hallwood was more familiar. At best, Hallwood's admitted misunderstanding of the requirements of the lease it signed is a simple mistake. However the mistake is entirely one by Hallwood's, thus, it is unilateral and not legally compensable. Hallwood describes the unilateral nature of its mistake in its certified claim to the contracting officer. Hallwood stated:

> There were a number of items contained within the SFO Lease Agreement which were uncharacteristic of a retail tenant space of which we are used to dealing with in our daily activities. As such, certain features required by the lease were not interpreted by us and therefore are not included in the contractor's original cost estimates.

DPFUF ¶ 27. (Emphasis in original).

Hallwood's failure to grasp the full extent of the scope of work as specified in the SFO in this case, does not provide any basis for recovery. To establish a unilateral mistake, Hallwood must demonstrate that (1) the contracting officer knew or should have known of the contractor's unilateral mistake at the time the bid was accepted and (2) the error is compensable, that is, a clear cut clerical or arithmetical error, or misreading of the specification. C.W. Over & Sons, Inc. v. United States, 44 Fed. Cl. 18, 29 (1999) (citing Bromley Contracting Co. v. United States, 794 F.2d 669, 672 (Fed. Cir. 1986).

Thus, Hallwood may recover based on a unilateral mistake in its proposal only upon evidence that the agency knew or should have known of the error at the time the bid was accepted. CTA Inc. v. United States, 44 Fed. Cl. 684, 695 (1999). Hallwood does not even allege that the agency had any reason to know that its bid was based upon a misunderstanding of the differences between providing a shell building for a retail space and providing a shell building for office space.

Moreover, Hallwood's cost proposal gave no indication that Hallwood did not, in fact, fully understand the scope of work required by the SFO here. Hallwood's cost proposal was a list of prices and work provided by its general contractor, Excel Construction. DPFUF ¶ 21. The price proposal stated only that it was a "Proposal for Social Security Administration Office in Hallwood Plaza - City of Flint." Id. Thus, the contracting officer had no reason to know or even suspect that it was not adequate to meet the SFO requirements.

Second, relief pursuant to unilateral mistake is available only for clerical errors or a clear misreading of specifications; it is not available for errors in judgment. Liebherr Crane Corp. v. United States, 810 F.2d 1153, 1157 (Fed. Cir. 1987) (citing United States v. Hamilton Enters., Inc., 711 F.2d 1038, 1046 (Fed. Cir. 1983)).

Hallwood's mistake was a mistake in business judgment, not a mistake in fact. Indeed, Hallwood's mistake concerned its understanding of the scope of work in the SFO, which alone is a mistake in judgment. The effect of that mistake in judgment was that Hallwood's original cost proposal did not cover Hallwood's costs to provide base building systems adequate for a commercial office space. The terms of the lease were clear and unambiguous. Hallwood must bear the cost of its own failure to

understand those terms.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant defendant's motion for summary judgment, and enter an order dismissing the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this _13th___ day of November, 2007, the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT", was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

__/s/ Joan M. Stentiford___
JOAN M. STENTIFORD