IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HALLWOOD PLAZA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-589C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TIMOTHY W. MIZEROWSKI
MIZEROWSKI & ASSOCIATES, P.C.
131 Ferland Street
Walled Lake, MI 48390
(248) 926-9205

Attorneys for Plaintiff

## TABLE OF CONTENTS


TABLE OF AUTHORITIES....................iv

INTRODUCTION....................1

RE-STATEMENT OF THE ISSUES....................1

RE-STATEMENT OF THE CASE....................2

I. Nature of the Case....................2

II. Statement of Facts....................2

SUMMARY OF THE ARGUMENT....................4

ARGUMENT....................5

I. Summary Judgment is Inappropriate in this Matter....................5

II. The SFO is Ambiguous and as Such There are Several Material Facts in Dispute....................6

A. The SFO Contemplates that Costs to Repair or Improve Fixtures will be Reimbursed and that Tenant Improvement Costs will be Added During the Construction Process ........7

B. A Material Dispute Exists as to Whether the Additional Items Completed as Contained in the Change Order are Part of the Building Shell or are Tenant Improvements Pursuant to the Terms of the SFO....................9

C. Hallwood's Interpretation of the SFO is Not Unreasonable and Relies on Several of the Express Provisions of the SFO....................17

III. Hallwood Plaza is not Requesting Relief on the Basis that it Made an Error of Business Judgment. Rather, the Government Requested Additional Tenant Improvements and Hallwood is Entitled to Equitable Adjustment....................18

IV. The Government is Estopped From Denying the Additional Items and Hallwood is Entitled to Contract Reformation....................20

A. The Government Should be Estopped from Denying Liability for the Requested Items....21

B. Hallwood is Entitled to Contract Reformation....22

V. The Government is Not Entitled to Summary Judgment Because it Has Acted in Bad Faith....23

CONCLUSION....24

# TABLE OF AUTHORITIES

## RULES OF FEDERAL PROCEDURE

Rule 56 of the Rules of the United States Court of Federal Claims

## CASES

Ace Constructors, Inc. U.S., 70 Fed.Cl. 253 (2006)....................................19

Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1371 (Fed. Cir. 2004)....................................6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)....................................5

Arakaki v U.S., 62 Fed.Cl 244 (2004)....................................8

Blackstone Consulting Inc. v U.S., 65 Fed.Cl. 463 (2005), *affirmed* 170 Fed.Appx. 128....................................7

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)....................................5

City of Gettysburg, S.D. v U.S., 64 Fed.Cl. 429 (2005), *affirmed* 173 Fed.Appx. 827, *certiorari denied* 127 S.Ct. 405....................................22

Clearwater Constructors, Inc. v U.S., 71 Fed.Cl. 25 (2006)....................................19

Coast Federal Bank, FSB v U.S., 323 F.3d 1035 (2003)....................................6

Conner Brothers Const. Co., Inc. v U.S., 65 Fed.Cl. 657 (2005)....................................21

Emerald Intern. Corp. v U.S., 54 Fed.Cl. 674, dismissed 60 Fed.Appx. 808......21

Flink/Vulcan v U.S., 63 Fed.Cl. 292 (2004), *affirmed* 163 Fed.Appx. 890.........18

George Sollitt Const. Co. v U.S. 64 Fed.Cl. 229 (2005)....................................22

Hubbard v U.S., 480 F.3d 1327 (2007)....................................23

Information Systems and Networks Corp. v U.S., 68 Fed.Cl. 336 (2005)............7

International Data Products Corp. v U.S., 70 Fed.Cl. 387 (2006)................18,21

Kaeper Machine, Inc. v U.S., 74 Fed.Cl. 1 (2006)....................................21

Long Island Sav. Bank, FSB v. United States, __ F.3d __, 2007 WL 2685640, at *7 (Fed. Cir. Sept. 13, 2007)........................................6

M.A. DeAtley Const., Inc. v U.S., 75 Fed.Cl. 575 (2007)...............................21

Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)........6

Metric Const. Co., Inc. v U.S., 73 Fed.Cl. 611 (2006)..................................19

Pacific Gas & Elec. Co. v U.S., 73 Fed.Cl. 333 (2006), *reconsideration denied* 74 Fed.Cl. 779........................................22

Smart Business Machines v U.S., 72 Fed.Cl. 706 (2006)...............................21

Tecom, Inc. v U.S., 66 Fed.Cl. 736 (2005)..................................................19

Turner Const. Co., Inc. v U.S., 367 F.3d 1319 (2004)..................................19

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HALLWOOD PLAZA, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-589C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

The government has failed in its burden to establish the absence of genuine issues of material fact. As such, Summary Judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") is inappropriate in this matter. Plaintiff respectfully requests this Honorable Court deny Defendant's request for Summary Judgment.

## RE-STATEMENT OF THE ISSUES

1. Whether Hallwood is entitled to equitable adjustment for the costs of additional Tenant Improvements performed at the request of the Government?
2. Whether Tenant Improvements performed were part of the contract or additional items requested by the Government at or after the March 16, 2005 pre-construction meeting?
3. Whether the Government is estopped from denying Hallwood's claims as a result of their conduct and whether Hallwood is entitled to contract reformation?

## RE-STATEMENT OF THE CASE

### I. Nature of the Case

This case arises out of a dispute regarding the interpretation of the provisions of a lease between the General Services Administration ("GSA") on behalf of the Social Security Administration ("SSA") and Hallwood Plaza ("Hallwood"). The Government requested the construction of several Tenant Improvements including the addition of a zone HVAC unit and certain other items including a rear exterior door, a fire alarm system, design drawings and work required by the City of Flint including numerous items requested by GSA employee Dan Fenner.

Hallwood challenges GSA's October 13, 2005 denial of these Tenant Improvements that were completed by Hallwood at the request of the GSA, SSA and Department of Homeland Security. GSA denied the Tenant Improvements on the basis that the items were contracted for as part of the buildings warm lit shell. **In this case, it is disputed whether these items were part of the contract documents or requested by the Government after the initial bid and whether the completed items were Tenant Improvements or part of the building shell.** Due to these material factual disputes, Summary Judgment is inappropriate in this matter.

### II. Statement of Facts

Hallwood relies on the attached Plaintiff's Response to Defendants Proposed Statement of Uncontroverted Facts. However, the following summary of key dates is important for this Honorable Court.

On November 1, 2004 the General Services Administration ("GSA") on behalf of the Social Security Administration ("SSA") issued a Solicitation For Offers ("SFO") for the development of a building in Flint, Michigan. **(SFO, Exhibit A).** On November 19, 2004 a Design Intent Drawing was issued by the GSA and SSA special requirements were issued on December 7, 2004. **(SSA Special Requirements, Exhibit B).**

On January 14, 2007, Hallwood's Best and Final Offer was submitted to the GSA. **(Best and Final Offer, Exhibit C).** On January 24, 2005 the GSA awarded the contract to Hallwood, **the only bidder on the project**. **(Price Negotiation Memorandum, Exhibit D; GSA's Award Letter, Exhibit E).** On February 20, 2005 Hallwood submitted a bid for Tenant Improvements to GSA in the amount of $217,245. **(Bid, Exhibit F).** On February 24, 2005 the GSA added 7% to the bid amount on behalf of Hallwood as project overhead and a Lease was entered into for $232,452.15 between the SSA and Hallwood for Tenant Improvements. **(GSA Correspondence, Exhibit G; Lease, Exhibit H).**

A Notice to Proceed with Construction was issued on February 28, 2005 and a SLA #1 was agreed upon on March 15, 2005. **(Notice to Proceed, Exhibit I; SLA #1, Exhibit J).** On March 16, 2005 a pre-construction meeting was held in Southfield, Michigan and several additional items were requested by GSA, SSA and Homeland Security for the leased space.

On March 29, 2005 a Change Order to the Tenant Improvements, as discussed at the pre-construction meeting, was provided to GSA by Hallwood through its General Contractor Excel Construction totaling $227,199.00. **(Excell**

**Change Order, Exhibit L).** On April 5, 2005, Hallwood sent correspondence to the Government's Contracting Officer regarding the costs of the Change Order items. **(Supplier Documents, Exhibit K; Correspondence, Exhibit M).** The Government's Contracting Officer did not deny the Change Order items. **(Correspondence, Exhibit N).** On April 20, 2005, the GSA and SSA incorporated **some** of the Tenant Improvements, totaling $98,228.90, into SLA #2. **(SLA#2, Exhibit O).** The remainder of the Tenant Improvement costs were denied by the GSA, however the GSA continued to demand that the work as detailed in the Excel Construction Change Order be performed.

On May 25, 2005 a tenant statement was provided to the Government. **(Tenant Statement, Exhibit P).** In July 2005 the City of Flint, Michigan required additional work and drawings from Hallwood in order to continue construction. **(City of Flint Documents, Exhibit Q).** Hallwood completed all items requested by the City of Flint, Michigan including the development of additional drawings.

On September 15, 2005, Hallwood submitted a Certified Claim for approximately $142,000 to the GSA for the unapproved Tenant Improvement costs. **(Certified Claim, Exhibit R).** On October 13, 2005, the GSA denied Hallwood's Certified Claim. **(Denial Letter, Exhibit S; Supplemental Denial, Exhibit T).**

## SUMMARY OF THE ARGUMENT

Viewing the facts of this case in a light most favorable to Hallwood, Summary Judgment is inappropriate due to the existence of disputed material facts. The parties do not agree as to whether the completed work as contained

in the Excel Construction Change Order was a Tenant Improvement or part of the building shell as defined by the SFO. Additionally, the Parties do not agree as to whether the work completed was required by the terms of the contract or requested by the Government as additions a change order to the terms of the contract.

Notwithstanding the many material factual disputes, the Government is not entitled to Summary Judgment as a matter of law. The Government is estopped from asserting its liability defenses and Hallwood is entitled to contract reformation and equitable adjustment. Finally, the Government acted in bad faith and as such is not entitled to Summary Judgment.

## ARGUMENT

### I. Summary Judgment is Inappropriate in this Matter

The government has filed this motion for Summary Judgment under RCFC 56. Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In considering a motion for Summary Judgment, the court's role is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. **The court must view the inferences to be drawn from the underlying facts in the**

**light most favorable to the nonmoving party.** Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1371 (Fed. Cir. 2004). (emphasis added).

The party seeking Summary Judgment must first demonstrate the absence of a genuine issue of material fact; once this burden is met, in order to defeat Summary Judgment, the non-moving party must present evidence which demonstrates such a genuine issue. Celotex Corp., 477 U.S. at 323; Long Island Sav. Bank, FSB v. United States, __ F.3d __, 2007 WL 2685640, at *7 (Fed. Cir. Sept. 13, 2007). **As discussed in greater detail below, the Government has failed in its burden to establish the absence of a genuine issue of material fact. As such, Summary Judgment is inappropriate in this matter.**

## II. The SFO is Ambiguous and as Such There are Several Material Facts in Dispute

Government contracts must be read as a whole and interpreted so as to harmonize and give reasonable meaning to all of their parts. Coast Federal Bank, FSB v U.S., 323 F.3d 1035 (2003). In this case, the SFO when read in conjunction with attachment number 2 provides the basis for disputes of material fact. **(SFO, Exhibit A). Specifically, whether the disputed items are Tenant Improvements or part of the warm lit building shell.**

For instance, even if the disputed HVAC system is found to be part of the building shell, the SFO on its face provides that upgrades to the existing fixtures in the building will be reimbursed. Indeed it is undisputed that the HVAC system was upgraded to a six (6) zone system. **Case law is clear, where a contract is deemed ambiguous where there are two reasonable interpretations that are**

**consistent with the contract language**. Information Systems and Networks Corp. v U.S., 68 Fed.Cl. 336 (2005). In determining the intent of parties to a contract, a court must construe the contact to effectuate its **spirit and purpose** giving meaning to all parts of the contract. Blackstone Consulting Inc. v U.S., 65 Fed.Cl. 463 (2005), *affirmed* 170 Fed.Appx. 128.

There is a reasonable dispute as to whether the SSA request(s) for the upgraded HVAC system items was a Tenant Improvement or a reimbursable upgrade to the building fixtures. Additionally, there are reasonable disputes as to whether the several items requested by Dan Fenner, such as the rear door and the fire alarm system were Tenant Improvements or part of the warm lit building shell.

**A. The SFO Contemplates that Costs to Repair or Improve Fixtures will be Reimbursed and that Tenant Improvement Costs will be Added During the Construction Process**

Section 1.9(B)(2)(e) 'Rental Rate Determination' 'Tenant Improvement Allowance' of the SFO provides:

> **Payment will not be made by the Government in instances where the Government accepts fixtures and/or other Tenant Improvements already in place. However, the Lessor will be reimbursed for costs to repair or improve the fixtures(s) and/or any other improvements already in place. (SFO, Exhibit A, p. 7).**

As discussed in greater detail below, the improvements to the HVAC system are repairs and improvements to fixtures which are reimbursable expenses pursuant to the SFO.

In addition to this broad and general language of the SFO, the GSA's Notice to Proceed and Mr. Kosman's (GSA's Contracting Officer) testimony all

contemplate and provide that there will be additional Tenant Improvements as construction continued and that the GSA or SSA would (as memorialized in the March 29, 2005 Excel Construction Change Order) reimburse Hallwood for these costs.

Further, Section 3.2 of the SFO provides that subsequent Tenant Improvements "may be requested to provide alterations during the term of the lease." Subpart (B) provides that orders may be placed by the contracting officer, GSA building manager or tenant agency officials approved by the contracting officer. **(SFO, Exhibit A, p. 14).** Hallwood notes that the Contracting Officer's (or the other identified individuals) authority to act can be expressed or implied. Arakaki v U.S., 62 Fed.Cl 244 (2004).

Indeed, the Government's February 28, 2005 Notice to Proceed states with respect to tenant improvement costs that, "[t]his cost may be adjusted if future changes to the tenant improvement requirements materialize during the build out of the space." **(Correspondence, Exhibit I) (emphasis added).**

Even the Contracting Officer, Gerald K. Kosman, admitted during deposition that the Tenant Improvements enumerated in attachment number 2 of the SFO are not "all inclusive." **(Deposition of Gerald K. Kosman, Exhibit U, p. 35).**

The concept that additional Tenant Improvements would arise during construction and that they would be paid for by the Government is illustrated in George Kashat's deposition testimony wherein he testified that the Governments requests (the ones that are the subject of the instant litigation) were **new**

**requests. (Deposition of George Kashat, Exhibit W, p. 25-26).** Certainly, at a minimum, it is a question of fact as to whether Hallwood (Mr. Kashat) had the right to rely upon the Government's Notice to Proceed that informed Mr. Kashat that if other Tenant Improvements "materialize" they would be paid by the Government. Indeed, other Tenant Improvements materialized as set forth in the Change Order prepared by Excel Construction on March 29, 2005 after the pre-construction meeting of March 16, 2005.

**B. A Material Dispute Exists as to Whether the Additional Items Completed as Contained in the Change Order are Part of the Building Shell or are Tenant Improvements Pursuant to the Terms of the SFO**

Attachment No. 2 of the SFO provides examples and delineates between Tenant Improvements and elements of the building shell. **(Deposition of Gerald K. Kosman, Exhibit U, p. 29).** Summary Judgment in favor of the Government is inappropriate due to the following disputed material facts:

**1. Item #12 Rear Entrance Door ($1,200)**

There is a material dispute as to why the rear door was replaced and, more importantly, whether the Government even requested an upgraded exterior door. At the March 16, 2005 pre-construction meeting, Homeland Security informed Hallwood that the Government **required an exterior hollow steel 18 gauge door. (Deposition of George Kashat, Exhibit W, p. 35).** The existing door and hardware was replaced by Hallwood at a cost of $1,200. The existing door was a hallow steel 16 gauge door.

Dan Fenner testified that the door was rusted and needed to be replaced on that basis. **(Deposition of Dan Fenner, Exhibit V, p. 18-19).** In contrast,

Gerald Kosman testified that the door was not compliant with the provisions of the SFO, although he could not determine the exact deficiency. **(Deposition of Gerald K. Kosman, Exhibit U, p. 67-68).** Mr. Kosman further testified that the door was required to be a hollow steel 16 gauge exterior door. **(Deposition of Gerald K. Kosman, Exhibit U, p. 69).** This requirement matches section 5.1 of the SFO wherein it states that building shell exterior doors shall be "hollow steel construction and shall be fully insulated, flush #16-gauge hollow steel." **(SFO, Exhibit A, p. 25).** Neither Messer's Fenner or Kosman testified that the door requirements were upgraded due to homeland security or SSA requirements.

However, an 18 gauge door and hardware was installed at the request of the Government. This is a material fact that is in dispute. Aside from the cost of the door itself, the costs of hardware are Tenant Improvement costs pursuant to section 5.13 of the SFO. **(SFO, Exhibit A, p. 25).** It is also a material dispute as to whether some of the door costs should be paid as Tenant Improvement costs of hardware.

**2. Item #17 Fire Alarm System ($4,300)**

There is a material dispute as to whether the improvements to the fire alarm system were Tenant Improvements or improvements required to be made as part of the building shell pursuant to the terms of the SFO.

Attachment No. 2 to the SFO provides that typical Tenant Improvements include "[f]ire **alarm wiring** from building core to tenant space and then within tenant space; **pull stations; strobes**; annunciators; and **exit signage** within the demised premises." **(SFO, Exhibit A, Attachment No. 2).** Indeed, the

improvements made to the fire alarm were Tenant Improvement costs and not part of the building shell as the Government contends. The fire alarm wiring was brought to the core of the building and then pull stations, strobes and exits were all added. Clearly, this is a factual dispute that must be resolved by the trier of fact.

The fact that the fire alarm system is in fact a tenant improvement is supported by the absence of the listing of "fire alarm system" in section 3.1 of the SFO which provides for costs and adjustments of items included in the building shell. **(SFO, Exhibit A, p. 14).** Moreover, Mr. Kosman admitted at deposition that the fire alarm wiring from the building core into tenant space is a Tenant Improvement which should be paid for by the Government. **(Kosman Deposition, Exhibit U, p. 80-83).** There is a dispute as to the nature of the wiring, i.e. whether it should be considered part of the building core or part of the core to the tenant area and thus an appropriate tenant improvement cost.

**3. Items #14 Ceiling Demolition Work ($22,700); #15 Light Fixtures ($6,400); #16 Duct Work ($43,763); and #19 Roofing for HVAC Unit ($7,891)**

Section 6.7 (B)(1) of the SFO specifically lists as a tenant improvement the zone control HVAC system. The Heating and Air Conditioning (SEP 2000) Tenant Improvement information is as follows:

> Zone Control. Individual thermostat shall be provided for office space with control areas not to exceed 2,000 ANSI/BOMA Office Area square feet. Areas which routinely have extended hours of operation shall be environmentally controlled through dedicated heating and air conditioning equipment. Special purpose areas (such as photocopy centers, large conference rooms, computer rooms, etc.) with an internal cooling load in excess of 5 tons shall be independently controlled. Concealed package air conditioning

> equipment shall be provided to meet localized spot cooling of tenant special equipment. Portable space heaters are prohibited from use. **(SFO, Exhibit A, p. 29).**

Attachment No. 2 to the SFO additionally provides additional Tenant Improvement information:

> [s]upplemental power, cooling, heating (**above the open office plan** layout capacities provided in the base building) higher rates of air exchanges – (if it entails **additional or upgraded air handling equipment**); pathogen control system; **and all other special HVAC components required by specific tenant needs**. **(SFO, Exhibit A).**

Further that "[c]hanges (moves) or additions to the open plan **lighting pattern**, or to the open plan HVAC distribution network (e.g. additional **ductwork**, ceiling diffuser, etc. to accommodate individual office layout)" are Tenant Improvements. Additionally, that "[u]pgrades or changes to building standard items, such as plaster or vaulted ceilings, specialty lighting, **and upgraded ceiling tile**" are Tenant Improvements.

**There is a material fact at issue as to whether the changes to the HVAC system and in turn to the lighting, ducts, ceiling and roof should be considered Tenant Improvements or part of the warm lit building shell.** If they are part of the building shell there is a dispute, as previously mentioned, as to whether the costs are reimbursable as upgrades to existing fixtures.

Hallwood provided an HVAC system as required by the SFO building shell, mainly an HVAC system for an *open office layout*. However, SSA required as a tenant improvement a zone system (6 zones were ultimately required). Hallwood could not determine the number of zones and appropriate costs at the time of the initial offer in response to the SFO or until the Design Intent Drawings

were provided. Additionally, there were more changes to the office layout (at the March 16, 2005 pre-construction meeting) which necessitated HVAC changes. Due to the SSA requirement to improve and upgrade to a zone HVAC system additional coolers, duct work and work on the roof was required and the ceiling and lights were required to be repaired and/or replaced.

The Government denies the ceiling, roof, duct and lighting costs on the basis that they are part of the warm lit shell. **(Denial Letter, Exhibit S).** However, it can not be disputed that there is a question of fact as to whether the zone HVAC is a Tenant Improvement and in turn whether the necessary changes to these areas are then also Tenant Improvements. It is not disputed that there was a drop ceiling, roof, HVAC for an open office area and lights. At issue is whether the request for a zone HVAC is a Tenant Improvement or part of the warm lit building shell which in turn led to the changes to the electrical and ceiling grid system.

Contracting officer Gerald Kosman testified that the HVAC and duct work were Tenant Improvements **but that he assumed** they were in the Tenant Improvement bid or the initial offer. **(Deposition of Kosman, Exhibit U, p. 88-89, 92).** He further testified that he had no idea what duct work was involved in this project, **(Deposition of Kosman, Exhibit U, p. 89, 102-103), but assumed** that the duct work was included in the bids. **(Deposition of Kosman, Exhibit U, p. 72).** Kosman testified that the ceiling tiles, if upgrade, would be a Tenant Improvement. **(Deposition of Kosman, Exhibit U, p. 77).**

Kosman testified that if the costs for installing a roof mounted HVAC system for the computer room was added that it would have been covered and the cost would have been increased from $4,600 to $7,800. **(Deposition of Kosman, Exhibit U, p. 95).** Clearly, the Government's argument is one of form over substance.

**4. Item #18 City Required Drawings Due to GSA Modifications ($19,875 of which $6,612 was paid by government); Item #22 Extra Work for City Requirements as a Result of Changes Requested by GSA ($18,340)**

There is a material dispute as to whether the requirement of additional design drawings is considered a tenant improvement due to modifications by the Government in its Design Intent Drawings or requirements provided at the March 16, 2005 pre-construction meeting or whether these drawings were the responsibility of Hallwood.

Section 1.10 (B) Tenant Improvements (SEP 2000) of the SFO provides:

> The Tenant Improvement Allowance shall include all the Offeror's administrative costs, general contractor fees, subcontractor's profit and overhead costs, Offeror's profit and overhead, **design costs, and other associated project fees necessary to prepare construction documents and to complete the Tenant Improvements. (SFO, Exhibit A, p. 7).**

Indeed, Dan Fenner testified that it is unlikely that Hallwood would have drawings at the pre-construction meeting, **(Deposition of Dan Fenner, Exhibit V, p. 13),** thus the need to have additional drawings prepared to satisfy the City of Flint building Department. After the Government provided additional requirements at the pre-construction meeting, the City of Flint, Michigan required additional design drawings in order to allow construction to continue. These

drawings were contracted to be covered Tenant Improvement costs by the Government pursuant to the terms of the SFO, Section 1.10 (B). The costs were submitted to the GSA on March 29, 2005 by Excel Construction (prior to the agreement of the SLA 2 and after the March 16, 2005 pre-construction meeting) and formal payment was requested in September 2005 by Hallwood. **(Excel Costs, Exhibit L).** The GSA denied the claim in October 2005, well after the documents were required, prepared and used to complete construction.

Notably, the Government paid for some of the additional drawings and as discussed in greater detail below, the Government is estopped from denying the remainder of the balance owed. Gerald Kosman testified that the additional design drawings were due to design changes or due to change orders requested by the Government and must be paid for by the GSA. **(Deposition of Gerald K. Kosman, Exhibit U, p. 101).**

Finally, the SFO provides that the Government will pay for drawings for Tenant Improvements. The Government admits that the drawings were required by the City of Flint, Michigan due to the Tenant Improvements of additional public bathroom, public vestibule and additional offices as requested at the March 16, 2005 pre-construction meeting. **(Denial Letter, Exhibit S).** It could not be known that the City of Flint, Michigan would require the drawings based on the Governments changes and modifications. However, this was a reasonable cost required by the City of Flint, Michigan based on the changes requested of Hallwood. As such it should be undisputed that the costs of the drawings were Tenant Improvements and as such are due and owing.

Similarly, the costs associated with completing the work required by the City of Flint, Michigan due to the Governments requests for additional Tenant Improvements is at issue. First, there is a material factual dispute as to whether the requests were for Tenant Improvements and if so whether the additional costs imposed by the City of Flint, Michigan may also be considered Tenant Improvement costs.

**5. Item #21 Extra Work Requested by Inspector Dan Fenner ($10,000.26)**

There is a material dispute as to **what work** Dan Fenner requested Hallwood to provide and second as to whether it is a Tenant Improvement or required under the building shell. Fenner testified that he requested extra work on a janitorial room with the addition of a sink and walls. **(Deposition of Fenner, Exhibit V, p. 21-22).** Fenner also requested an additional work station with electrical and internet wiring. **(Deposition of Fenner, Exhibit V, p. 29).** In Mr. Kosman's denial letter of October 13, 2005, the GSA states that Fenner requested conduit, data and electrical wiring and door hardware. **(Denial Letter, Exhibit S).**

As noted above, door hardware is by contract considered a Tenant Improvement cost pursuant to SFO section 5.13. **(SFO, Exhibit A, p. 25).** With respect to the janitorial closet, the SSA Special Requirements document at section 5.3 provides that there should be a 340 sq ft closet area with resilient floor covering and painted walls. **(SSA Special Requirements, Exhibit B).** Mr. Fenner request additional materials and work to be performed including a sink. As such, this work is in addition to the SFO requirements and Hallwood is entitled

to payment. Mr. Fenner's request for an additional work station with additional wiring is also additional work not contemplated in the SFO. These items are all material facts in dispute that prevent Summary Judgment on this issue.

### 6. Item #23 Administration @ 10% of Additional Costs ($15,069.60)

Section 1.10 (B) of the SFO provides in relevant part that "[t]he Tenant Improvement Allowance shall include all **the Offeror's administrative costs**, general contractor fees, subcontractor's profit and overhead costs." **(SFO, Exhibit A, p. 7).** Gerald Kosman testified at deposition that a 10% administrative fee is typical. **(Deposition of Kosman, Exhibit U, p. 100).** This item is dependant on the material disputes that exist to the other items discussed above.

### C. Hallwood's Interpretation of the SFO is Not Unreasonable and Relies on Several of the Express Provisions of the SFO

Hallwood submitted the disputed costs to the Government on March 29, 2005 in a Change Order through its General Contractor Excel Construction prior to the execution of the April 10, 2005 SLA 2 agreement. **(Excel Costs, Exhibit L).** A formal demand was made on September 15, 2005 and denied on October 13, 2005. **The denial was made many months after the work had been completed.** Importantly, the Government has not argued that the requested items to be paid were cont completed. Rather, all items as set forth in the March 29, 2005 Change Order were properly completed as requested by the SSA. A detailed review of the many Tenant Improvement sections of the SFO including Attachment No. 2, as discussed above, reveals that there are several material facts at issue. Specifically, when the work was requested; whether they were

additional items to the SFO; and whether the work should be considered a Tenant Improvement or part of the warm lit building shell pursuant to the terms of the SFO.

It is not unreasonable, as outline above, for Hallwood to believe that these costs would be paid for by the Government. This is particularly true where the work was requested, completed by Hallwood and **partially paid for by the Government.**

## III. Hallwood Plaza is not Requesting Relief on the Basis that it Made an Error of Business Judgment. Rather, the Government Requested Additional Tenant Improvements and Hallwood is Entitled to Equitable Adjustment

Equitable adjustments are corrective measures utilized to keep a contractor whole when the Government modifies a contract; essentially they are fair price adjustments under a contracts clause for changed work. International Data Products Corp. v U.S., 70 Fed.Cl. 387 (2006). If a Contracting Officer compels a government contractor to perform work not required under the terms of the contract, his order to perform, even if oral, **constitutes an authorized but unilateral change in the work called for in the contract and entitles the contractor to an equitable adjustment in accordance with the change order.** Flink/Vulcan v U.S., 63 Fed.Cl. 292 (2004), *affirmed* 163 Fed.Appx. 890. (emphasis added). In this case, the Government requested several modifications and extra items from Hallwood. Additionally, several items were Tenant Improvements costs that became known as construction progressed. The SFO provided that these items would be treated as Tenant Improvements and as such, reimbursable to Hallwood.

In order to show equitable adjustment, Hallwood must establish three (3) elements: liability, causation and resultant injury. Tecom, Inc. v U.S., 66 Fed.Cl. 736 (2005). Here, if the items are considered Tenant Improvements, then the Government is liable for the costs associated with completing the work. The proper measure of an equitable adjustment is the extra costs incurred by the government contractor, if those costs are reasonable. Ace Constructors, Inc. U.S., 70 Fed.Cl. 253 (2006). The costs of the work performed and the reasonableness of those costs are not disputed in this case. The only dispute is whether the Government is liable for the costs.

It is also clear that Hallwood is entitled to additional compensation for constructive changes. Clearwater Constructors, Inc. v U.S., 71 Fed.Cl. 25 (2006). A constructive change arises where the Government, without more, expressly or impliedly orders the contractor to perform work that is not specified in the contract documents. Clearwater Constructors, Inc. v U.S., 71 Fed.Cl. 25 (2006); *see also* Turner Const. Co., Inc. v U.S., 367 F.3d 1319 (2004); M.A. DeAtley Const., Inc. v U.S., 75 Fed.Cl. 575 (2007). Under the constructive change doctrine, the Government is liable for additional work caused by a constructive change to a Government Contract. Metric Const. Co., Inc. v U.S., 73 Fed.Cl. 611 (2006).

The Government's requirement of an upgraded rear door, additional fire safety equipment, and changes to the tenant space thus affecting the HVAC zone requirements, lighting and ceiling grid as well as the City requirements for the space, constitute constructive changes to the contract.

## IV. The Government is Estopped From Denying the Additional Items and Hallwood is Entitled to Contract Reformation

Pursuant to the terms of the SFO, section 1.11(A)(1), the changes and disputed items requested should be submitted to the Government to determine if the costs are "fair and reasonable" **(SFO, Exhibit A, p. 8).** Thereafter, the Contracting Officer determines if the costs are fair and reasonable and if so approves the work. The Contracting Officer will then modify the lease with a Supplemental Lease Agreement (SLA) to incorporate the actual costs in the rental rate. In this case Contracting Officer Gerald K. Kosman after receiving the Excel Construction Change Order on March 29, 2005, after the March 16, 2005 pre-construction meeting, was required to advise Hallwood of cost deviations or delete items contemplated by the Government. **If an agreement could not be reached Kosman was required to advise Hallwood in writing that the work was not to be done.** However, Kosman chose to remain silent and allowed the work to be completed until denying a substantial portion of the Change Order on October 13, 2005.

**Kosman admitted at deposition that in this case there was no Notice Not to Proceed with any of the work. (Deposition of Kosman, Exhibit U, p. 103). Kosman also testified that no additional notice to proceed was issued and that the work still needed to be done. (Deposition of Kosman, Exhibit U, p. 105).** Further, Hallwood could not opt out of the "to do list", they would just not get paid for the work. **(Deposition of Kosman, Exhibit U, p. 105).**

In this case, the SFO provided in section 1.12 (C) that negotiations with the Contracting Officer may be oral or in writing. **(SFO, Exhibit A, p. 9).** As such,

even if the Government disputes the submission of the item costs by Excel Construction, Kosman was still required to provide Notice Not to Proceed to Hallwood if the costs were not going to be paid after the items were requested at the March 16, 2005 pre-construction meeting and confirmed in a Change Order of March 29, 2005.

**A. The Government Should be Estopped from Denying Liability for the Requested Items.**

**The pre-construction meeting and the subsequent items requested to be performed constituted an implied contract and the Government should be estopped from denying payment.** A contract implied in law is one in which a duty to make restitution is implied, regardless of the lack of mutual assent for reasons of justice and equity. Emerald Intern. Corp. v U.S., 54 Fed.Cl. 674, dismissed 60 Fed.Appx. 808. Although not embodied in an express contract, a contract implied in fact is inferred from the conduct of the parties showing, in light of their actions, their understanding. International Data Products Corp. v U.S., 70 Fed.Cl. 387 (2006). Recovery in quantum meruit is based upon a contract implied in law which is one in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice. International Data Products Corp. v U.S., 70 Fed.Cl. 387 (2006).

Equitable estoppel is a judicial remedy by which a party, here the Government, may be precluded by its own acts or omissions from asserting a right to which it otherwise would have been entitled. Kaeper Machine, Inc. v U.S., 74 Fed.Cl. 1 (2006); Smart Business Machines v U.S., 72 Fed.Cl. 706 (2006). Estoppel may lie for a course of conduct. Conner Brothers Const. Co., Inc. v

U.S., 65 Fed.Cl. 657 (2005). Conduct may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it. City of Gettysburg, S.D. v U.S., 64 Fed.Cl. 429 (2005), *affirmed* 173 Fed.Appx. 827, *certiorari denied* 127 S.Ct. 405. An explicit representation is not a necessary precondition for a finding of equitable estoppel.

Hallwood is entitled to payment of the services provided on the basis of estoppel. **The reasonableness of the charges are not at dispute in this case.** Liability is the only issue in contention. As such, if the Government is estopped from asserting its defense that the costs are part of the building shell, thus it is obligated to pay the full amount due.

**B. Hallwood is Entitled to Contract Reformation**

Reformation serves to bring the parties' written contract in accord with their agreement. Pacific Gas & Elec. Co. v U.S., 73 Fed.Cl. 333 (2006), *reconsideration denied* 74 Fed.Cl. 779. For example, where the inadvertence of both a government contractor and the Navy resulted in added costs for installation of a chiller in building of a naval training center, the equitable remedy of reformation of contract was appropriate. George Sollitt Const. Co. v U.S. 64 Fed.Cl. 229 (2005).

In this case, given the timeline and nature of the Governments requests as Tenant Improvements, Hallwood is entitled to contract reformation to allow for the inclusion of these costs. To hold otherwise would be unjust and inequitable.

## V. The Government is Not Entitled to Summary Judgment Because it Has Acted in Bad Faith

The Government's position is not substantially justified. Bad faith in contracting in this case is evidenced by the Governments conduct and violation of its implied covenant of good faith and fair dealing toward Hallwood. Hubbard v U.S., 480 F.3d 1327 (2007). Essentially, the Government's position is that it knew the HVAC needed to be reconfigured and that the other items which were requested need to be completed, however their costs were not included in Hallwood's initial bid. Nevertheless, the Government demanded the work be performed consistent with the March 29, 2005 Change Order. The Government was aware the work was being completed by Hallwood. Consequently, the Government knew it would refuse payment of the Change Order and in fact refused payment.

Gerald Kosman testified that, "I knew he (Kashat) had to add air conditioning. I knew going into this that the space needed air conditioning." **(Deposition of Gerald K. Kosman, Exhibit U, p. 27, 70).** Further he testified that the work still needed to be done, but that he Government would just not pay for it. **(Deposition of Gerald K. Kosman, Exhibit U, p. 65).** He testified that the Government knew that the work was being performed **(Deposition of Gerald K. Kosman, Exhibit U, p. 104) and that Hallwood, through Excel Construction, had submitted a change order for the disputed costs prior to the April 20, 2005 SLA 2 agreement. (Deposition of Gerald K. Kosman, Exhibit U, p. 103). (emphasis added).**

Alternatively, if the Government did not act in bad faith, it made a mutual mistake with Hallwood in that these costs were not part of the appropriate bid and should have been. This mistake is evidenced by Kosman's testimony that he had no was no way to verify if the disputed items were part of Hallwood's initial offer , best and final offer or bid for Tenant Improvements. **(Deposition of Kosman, Exhibit U, p. 105).** As such, Summary Judgment is inappropriate due to the Government's bad faith conduct.

## CONCLUSION

The government has failed in its burden to establish the absence of genuine issues of material facts. As such, Summary Judgment is inappropriate in this matter. Plaintiff respectfully requests that this Honorable Court deny Defendant's motion for Summary Judgment.

Respectfully submitted,

/s/ TIMOTHY W. MIZEROWSKI
MIZEROWSKI & ASSOCIATES, P.C.
131 Ferland Street
Walled Lake, MI 48390
(248) 926-9205
Attorneys for Plaintiff

January 4, 2008

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this ___ day of January, 2008, the foregoing "PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT", was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Timothy W. Mizerowski
TIMOTHY W. MIZEROWSKI