IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HALLWOOD PLAZA, INC. , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-589C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S REPLY BRIEF

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

Attorneys for Defendant

## TABLE OF CONTENTS

ARGUMENT .......... 2

I. Summary Judgment Is Appropriate Here .......... 2

II. Interpretation Of The Lease Documents Cannot Create Disputed Facts .......... 2

III. Hallwood Is Not Entitled To An Equitable Adjustment For Performing Work Required By The Original Terms Of The Lease .......... 7

A. The Court Does Not Possess Jurisdiction Over Contracts Implied-In-Law .......... 8

B. Hallwood Has No Claim For Equitable Estoppel .......... 9

IV. Hallwood Cannot Prevail Upon Its Theory Of Breach Of Implied Duties .......... 11

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

## CASES


American Employers Insurance Co. v. United States,
812 F.2d 700 (Fed. Cir. 1987) ............................................................ 7

Anderson v. Liberty Lobby, Inc, 477 U.S. 317 (1986) ............................................. 2

Bristol-Myers Squbb Co. v. United States
48 Fed. Cl. 350 (2000) .................................................................. 3, 4

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ........................................................ 2

Chalender v. United States,
119 F. Supp. 186 (Ct. Cl. 1954) ....................................................... 12

Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States
671 F.2d 1305 (1982) ........................................................................ 7

City of Cincinnati v. United States,
153 F.3d 1375 (Fed. Cir. 1998) ........................................................ 9

Dale Constr. v. United States,
168 Ct. Cl. 692 (1976) .................................................................... 12

George A. Fuller Co. v. United States,
69 F. Supp. 409 (Ct. Cl. 1947) ......................................................... 12

Gilbert v. Dept. of Justice,
334 F.3d 1065 (Fed. Cir. 2003) ........................................................ 3

Government Sys. Advisors, Inc. v. United States
847 F.2d 811 (Fed. Cir. 1988) ............................................................ 3

Gresham, Smith & Partners v. United States,
24 Cl. Ct. 796 (1991) ........................................................................ 3

Harris v. Dep't of Veterans Affairs,
142 F.3d 1463 (Fed. Cir. 1998) ........................................................ 4

Heckler v. Cmty. Health Servs. of Crawford County, Inc.,
467 U.S. 61 (1984) ........................................................................... 10

Hercules v. United States,

516 U.S. 417 (1996) .......................................................................... 8, 13

International Data Products Corp. v. United States
70 Fed. Cl. 387 (2006) ........................................................................ 8, 9

International Mfg. Co. v. United States,
4 Cl. Ct. 491 (1984) ............................................................................ 13

Kaeper Machine, Inc. v. United States,
74 Fed. Cl. 1 (2006) ............................................................................ 10

Lamirage, Inc. v. United States,
44 Fed. Cl. 192 (1999) ........................................................................ 8

Matsushita Elec. Indus. v. Zenith Radio Corp.,
475 U.S. 574 (1986) ............................................................................ 3

Mays v. United States Postal Serv.,
995 F.2d 1056, 1059 (Fed. Cir. 1993) ............................................... 2

P.J. Maffei Bldg. Wrecking v. United States,
732 F.2d 913, 916-17 (Fed. Cir. 1984) ............................................. 2,3

Petrofsky v .United States,
488 F.2d 1394 (1983) .......................................................................... 12

Rumsfeld v. United Technologies Corp.,
315 F.3d 1361 (Fed. Cir. 2003) .......................................................... 10

Smart Business Machines v. United States,
72 Fed. Cl. 706 (2006) ........................................................................ 11

Swift Chemical Co. v. Usamex Fertilizers, Inc.,
490 F.Supp. 1343 (E.D. La. 1980),
aff'd 646 F.2d 1121 (5th Cir. 1981) .................................................... 7

Tecom, Inc. v. United States,
66 Fed. Cl. 736 (2005) ........................................................................ 7

Travelers Indemnity Co. v. United States,
16 Cl. Ct. 142 (1988) .......................................................................... 12

Triax Pacific, Inc. v. West,
130 F.3d 1469, 1473 (Fed. Cir. 1997) ............................................... 2

United States v. Ford Motor Co.,
463 F.3d 1267 (Fed. Cir. 2006) .......................................................... 10

United States v. Mitchell,
463 U.S. 206 (1983) .......................................................................... 8

Wah Chang Corp. v. United States,
282 F.2d 782 (1960) ......................................................................... 12

Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.,
103 F.3d 1571 (Fed. Cir. 1997), cert. denied, 522 U.S. 818 (1997) ............... 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HALLWOOD PLAZA, INC. , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-589C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF**

The United States replies to plaintiff Hallwood Plaza, Inc's ("Hallwood"), opposition to the Government's motion to dismiss. Hallwood is not entitled to the recovery it seeks because the work for which Hallwood seeks payment was required by the original solicitation for offers ("SFO"), and the costs were required to be provided for in Hallwood's original proposals. Hallwood misunderstood, and therefore underestimated, the amount of work necessary to complete the requirements of the lease it signed with the General Services Administration ("GSA"). The lease between Hallwood and the United States was a performance lease, which required Hallwood to provide a warm-lit shell building that included all basic building services, as well as some tenant improvements. All requirements of the shell building and the original tenant improvements are clearly set out in the terms of the lease. The only changes to the original SFO were certain items that were added to the lease by supplemental lease agreement number two, and GSA has paid Hallwood all costs properly associated with that additional work. Hallwood's failure to understand the terms and requirements of the lease does not render the terms of the lease ambiguous, nor does it entitle Hallwood to an equitable adjustment or any

other relief.

## ARGUMENT

### I. Summary Judgment Is Appropriate Here

Issues of contract interpretation, such as raised here, present questions of law that are uniquely appropriate for summary judgment. Mays v. United States Postal Serv., 995 F.2d 1056, 1059 (Fed. Cir. 1993); P.J. Maffei Bldg. Wrecking v. United States, 732 F.2d 913, 916-17 (Fed. Cir. 1984). If the language of the contract is unambiguous, the Court must accept its plain meaning. Triax Pacific, Inc. v. West, 130 F.3d 1469, 1473 (Fed. Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc., 103 F.3d 1571 (Fed. Cir. 1997), cert. denied, 522 U.S. 818 (1997). The Court should interpret the contract and rule that Hallwood cannot, as a matter of law, establish any claim for additional compensation.

### II. Interpretation Of The Lease Documents Cannot Create Disputed Material Facts

Summary disposition may be granted where there is no genuine dispute over a material fact. Anderson, 477 U.S. at 248. A material fact is one that might affect the outcome of the suit under the governing substantive law. Id. Any doubt as to factual issues must be resolved in favor of the party opposing summary judgment to

whom the benefit of all presumptions and inferences run. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Despite Hallwood's arguments to the contrary, the material facts here are not in dispute.

Hallwood argues that there is a disputed material fact as to the work required by the lease. Hallwood characterizes as a disputed material fact the question of whether the particular items of work for which it now seeks an equitable adjustment were required by the terms of the original SFO as elements of the shell building or as tenant improvements. Plaintiff's Brief ("Pl. Br.") 6. Indeed, in all of its lengthy treatment of this issue, this is the only disputed "fact" Hallwood identifies. Pl. Br. 6-17. Hallwood's analysis is incorrect. Evaluating whether particular work was required as part of the shell building or as a tenant improvement presents a question of law, not fact. As the Federal Circuit noted, "The identification of the performance that is required by a contract turns upon contract interpretation and is therefore an issue of law." Gilbert v. Department of Justice, 334 F.3d 1065, 1071-72 (Fed. Cir. 2003). Far from creating a factual roadblock, it is well established that contract interpretation is a matter of law and, therefore, is amenable to summary judgment. Government Sys. Advisors, Inc. v. United States, 847 F.2d 811, 812 n.1 (Fed. Cir. 1988); P.J. Maffei Bldg. Wrecking, 732 F.2d at 916.

In interpreting the contract, the Court must first determine whether an ambiguity exists in the contract. Gresham, Smith & Partners v. United States, 24 Cl. Ct. 796, 802 (1991). A contract term is unambiguous when there is only one reasonable interpretation. Bristol-Myers Squbb Co. v. United States, 48 Fed. Cl. 350, 355 (2000). In interpreting the language of a contract, its terms must be

accorded their plain and ordinary meaning. Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998). When the contract language is unambiguous, the Court's inquiry is at an end, and the plain language of the contract is controlling. Bristol-Myers Squibb Co., 48 Fed. Cl. at 355.

As we established in our opening brief, the SFO clearly stipulates the scope of work to be performed: to provide a warm lit shell including the base building requirements and tenant area requirements. Specifically:

- SFO section 1.9(B)(1)(b) required the lessor to provide a "base building structure and building enclosure components (windows, with exterior finishes) are complete. (No window treatments, i.e. blinds, draperies, etc.). Id.
- SFO section 1.9(B)(1)(c) provided that "The base building electrical and mechanical systems are complete and functional (central fire alarm, chiller plant, cooling towers, etc.)."
- SFO Section 1.9(B)(1)(c) required "a designated connection point to the central fire alarm system, for extension to tenant demised area(s). Id.
- Among other requirements, the tenant areas section of the warm lit shell required

  A full installed 2x2 foot suspended acoustical ceiling, with 2x2 parabolic fluorescent (or other building standard such as 2'0" x 4'0") fixtures installed in the ceiling grid for an open office plan at the rate of 1 fixture per 80 BOMA office usable (100 rentable) square feet, is provided.

And,

Central heating, ventilation and air conditioning systems are installed and operational, including as appropriate, main and branch lines, VAV boxes, dampers, flex ducts and diffusers, for an open office layout. Conditioned air through medium pressure ductwork at a rate of.75 cfm/square foot of BOMA office area is provided.

- SFO Section 1.9(B)(1)(d) stated:

  All Offeror's administrative, overhead, design costs, and other associated project fees necessary to prepare construction documents to complete all tenant improvements contemplated by the Government shall be included as part of the shell base rental rate. It is the successful Offeror's responsibility to prepare all documentation (working drawings, etc.) required to receive construction permits.

- The Tenant Improvement Allowance was defined in section 1.09(B)(2)(a) of the SFO as "all alterations for the Government demised area over and above the warm lit shell buildout."

- Section 1.10(B) of the SFO, provided: The Tenant Improvement Allowance shall include all the Offeror's administrative costs, general contractor fees, subcontractor's profits and overhead costs, Offeror's profit and overhead, design costs, and other associated project fees necessary to prepare construction documents to complete the Tenant Improvements. It is the successful Offeror's responsibility to prepare all documentation (working drawings, etc.) required to receive construction permits. NO COSTS ASSOCIATED WITH THE BUILDING SHELL SHALL BE INCLUDED IN THE TENANT IMPROVEMENT PRICING.

DPFUF ¶¶ 6-12.

These excerpts from the SFO establish that there was no ambiguity in the requirements of the SFO. Absent an ambiguity, the plain language of the document

is controlling in establishing Hallwood's responsibilities under the lease. Hallwood's cost estimates, however, for the shell building work and the tenant improvement work were not the product of ambiguous lease terms, but rather on Hallwood's mistaken, or incomplete, understanding of the extent of the work required to convert a former retail space to a Social Security office. DPFUF ¶ 27.

Indeed, Hallwood submitted its cost proposal for tenant improvements before actually determining what work would be required. Hallwood submitted its original proposal for the shell building on January 18, 2005, and a proposal for the tenant improvements on February 20, 2005. App. 87-89, and 112-114. Hallwood's proposal for the tenant improvements specifically stated that it "included all labor, materials, and equipment to complete finish project." App. 112. Yet the earliest proposal from Hallwood's heating and air conditioning subcontractor is dated March 9, 2005. App. 137. Thus, despite the clear requirement that heating and air conditioning were to be provided as part of the shell building, Hallwood did not determine what work would actually be required, or its cost, until after award of the contract and after bidding the job.

Any unilateral mistake in Hallwood's cost estimates, cannot constitute a basis for recovery. The cost estimate was Hallwood's exclusive responsibility to determine how to complete in order to meet the performance specification, and does not affect the bargain of the contract. Moreover, it is well-settled that "[a] unilateral mistake about a particular fact is insufficient to reform a contract otherwise properly entered into." Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States, 671 F.2d 1305, 1311 (1982), (quoting, Swift Chemical Co. v. Usamex Fertilizers, Inc., 490 F.

Supp. 1343, 1356 (E.D. La. 1980), aff'd, 646 F.2d 1121 (5th Cir. 1981)). See also American Employers Insurance Co. v. United States, 812 F.2d 700, 705 (Fed. Cir. 1987) ("In most circumstances, reformation is not available for unilateral mistake and the contractor bears the risk of its own error.")

Pursuant to the lease, Hallwood was responsible for meeting the building shell requirements and the tenant improvement costs. At the time of the execution of the lease, Hallwood was clearly in a far better position than GSA to determine whether Hallwood could estimate its costs to complete the contract. Hallwood is, thus, not entitled to have the contract reformed because any alleged mistake was unilateral on the part of Hallwood.

## III. Hallwood Is Not Entitled To An Equitable Adjustment For Performing Work Required by the Original Terms Of The Lease

Hallwood claims that it is entitled to an equitable adjustment because the Government constructively changed the contract at the pre-construction meeting held on March 16, 2007. Pl. Br. 19. Hallwood's claim fails because Hallwood cannot establish the three elements necessary to receive an equitable adjustment: liability, causation, and damages. Tecom, Inc. v. United States, 66 Fed. Cl. 736, 775 (2005). Here, Hallwood cannot establish that the unpaid work was the product of a constructive change to its lease with GSA, and therefore cannot meet its burden of proving causation by a preponderance of the evidence. Id.

As is clear from the record, the Government has paid Hallwood for all work added at the pre-construction meeting. Indeed, the additional work requested following the pre-construction meeting was formally incorporated into the lease by

Supplemental Lease Agreement number 2, and the Government has paid all costs requested by Hallwood. DPFUF ¶ 25. The items for which Hallwood seeks additional compensation were required by the original terms of the lease, they were not additional work. The unpaid work, therefore, is work that Hallwood should have included in its original cost proposal, and does not constitute adequate grounds for an equitable adjustment.

A. The Court Does Not Possess Jurisdiction Over Contracts Implied-In-Law

Hallwood claims that it has an implied in fact contract for what it describes as "extra work" requested at the pre-construction meeting. Pl. Br. 21. It is well settled that this Court does not possess jurisdiction to entertain claims arising from a contract based upon the theory of promissory estoppel or based on contracts implied-in-law. Hercules v. United States, 516 U.S. 417, 423 (1996); United States v. Mitchell, 463 U.S. 206, 218 (1983); Lamirage, Inc., v. United States, 44 Fed. Cl. 192, 199-200 (1999). However, even if this Court did possess such jurisdiction, its recovery is barred by the terms of the contract.

Nor does Hallwood's case meet the limited exception for the Court's jurisdiction on quantum meruit, which requires a showing that there is either a defect in the existing contract that led the Government not to pay for goods and services received, or an implied-in-fact contract obligating the Government to pay. International Data Products Corp. v. United States, 70 Fed. Cl. 387, 404 (2006). To establish an implied-in-fact contract here, Hallwood would have to allege that even though an express offer and acceptance are missing from the contract, the

parties' conduct indicates mutual assent and intention that GSA intended to pay additional tenant improvement costs for work clearly required as part of the shell building or the original tenant improvement costs. City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998). As the contract provided an express clause that no tenant improvement costs would be paid for shell building requirements, there is no basis on which the Court could find an implied-in-fact contract that contradicted the plain meaning of the actual contract. Id.; DPFUF ¶ 12. Based on the express language of the contract, there is no basis on which Hallwood can argue that the parties' behavior could be interpreted as (1) an offer, (2) acceptance, (3) consideration, or (4) an agreement with a Government agent authorized to bid the Government.

Nor is there any defect in the lease documents executed by the parties. On the contrary, the Government seeks to hold Hallwood to its bargain with GSA to perform all work in accordance with the express terms of the lease. Absent a finding of either a defective contract or an implied-in-fact contract, Hallwood's claim for quantum meruit damages must fail. International Data Products, 70 Fed. Cl. 404. There is no basis on which to require the Government to pay additional tenant improvement costs for work that was properly within the original requirements of the SFO. DPFUF ¶¶ 6-12.

B. Hallwood Has No Claim for Equitable Estoppel

It is well settled that equitable estoppel applies to the Government in only limited circumstances, and that a party asserting equitable estoppel bears a heavy burden. Rumsfeld v. United Technologies Corp., 315 F.3d 1361, 1377 (Fed. Cir.

2003) (citing Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 61, 60 (1984)). The doctrine of equitable estoppel applies to the Government only where there is a showing of affirmative misconduct by a Government employee. United States v. Ford Motor Co., 463 F.3d 1267, 1279 (Fed. Cir. 2006). Here, although Hallwood states that equitable estoppel provides a basis for granting it relief, it does not identify any affirmative misconduct on the part of the Government. Indeed, Hallwood does not meet any of the requirements for establishing a prima facie case of equitable estoppel against the Government:

> 1) the Government must know the true facts;
> 2) the Government must have intended Hallwood to rely on conduct and statements from the Government;
> 3) Hallwood must have been ignorant of the true facts;
> 4) Hallwood must have relied on the Government's conduct to its detriment.

Kaeper Machine, Inc. v. United States, 74 Fed. Cl. 1, 9 (2006).

Here, Hallwood was in possession of the original SFO which set out the shell building requirements, and the basic tenant improvements. For whatever reason, Hallwood apparently failed to understand the terms of the SFO and to appreciate the full scope of work required to provide the shell building and tenant improvements. A review of the pertinent terms of the SFO reveal no misrepresentation by the Government about its requirements. DPFUF ¶¶ 6-12. Hallwood does not allege that anyone from the Government told it to ignore the plain meaning of the SFO, or otherwise misled it. There is no evidence that the Government hid any "true facts" from Hallwood with respect to providing the shell building and the tenant improvements. Indeed, the Government incorporated the changed work into

Supplemental Lease Agreement Number 2, and obtained Hallwood's approval and signature for those changes. It is undisputed that the Government has paid for all work added by that agreement.

Hallwood's dispute is founded in its flawed position that it was required to perform "extra work" and that the Government is therefore responsible for payment. Pl. Br. 21-22. As we have established, the work for which Hallwood seeks payment was required by the SFO; Hallwood neglected to include it in its original cost proposal owing to its misunderstanding of what was required. This is simply not a basis for recovery, and certainly does not present any element of Government misrepresentation, as is necessary for equitable estoppel. Smart Business Machines v .United States, 72 Fed. Cl. 706, 711 (2006) (denying claim for equitable estoppel where plaintiff failed to identify any affirmative misconduct on the part of the Government.)

**IV. Hallwood Cannot Prevail Upon Its Theory of Breach Of Implied Duties**

Hallwood argues that the Government breached implied duties of good faith, cooperation and fairness during Hallwood's performance of the lease. Pl. Br. 23. Hallwood cites statements of the contracting officer, Gerald Kosman, that Mr. Kosman knew at the time the lease was signed that Hallwood would have to add air conditioning to the leased space. Id.

Significantly, Hallwood cannot point to any violation of the terms of the contract, nor any change to the air conditioning requirements, nor to any

unreasonable action by the Government.[1] Because Hallwood is unable to identify any basis in the contract for this claim, defendant is entitled to summary judgment. Travelers Indemnity Co. v. United States, 16 Cl. Ct. 142 (1988)(the Court found its jurisdiction to consider an implied-in-fact covenant for good faith and fair dealing must arise from an express contract between the parties).

Hallwood's claim rests upon an implied duty of the Government to cooperate with contractors. See Dale Constr. v. United States, 168 Ct. Cl. 692, 700 (1976); Chalender v. United States, 119 F. Supp. 186, 190 (Ct. Cl. 1954); George A. Fuller Co. v. United States, 69 F. Supp. 409, 411 (Ct. Cl. 1947). Implicit in the duty to cooperate is the principle that every contract has a condition that "'neither party to the contract will do anything to prevent performance thereof by the other party or that will hinder or delay him in its performance.'" Petrofsky v. United States, 488 F.2d 1394, 1404 (1973), (quoting Wah Chang Corp. v. United States, 282 F.2d 728, 733-34 (1960)).

Here, the Government at no time took any action to hinder or prevent Hallwood from performing the contract. Hallwood's claim that the Government failed to perform a duty to cooperate is simply a restatement of its claim for an equitable adjustment. Hallwood asks this Court to reform its contract, not because the Government acted in a manner to make compliance with its terms more difficult, but, rather, because the Government insisted that the lease documents meant what they

[1] The only HVAC work specified there was to provide a dedicated system to cool the computer room, and it is undisputed that Hallwood was compensated $4,680 for that additional work. DPFUF ¶ 25.

said when they defined the requirements of the shell building and tenant improvements. The simple fact is that Hallwood seeks additional compensation for work that was clearly required by the SFO and the Supplemental Agreement. Hallwood should have understood that and provided for the work in its original cost proposals for the shell building costs and the tenant improvements. For example, the SFO clearly provides that heating and air conditioning are required as part of the shell building. DPFUF ¶ 9. Yet Hallwood's original cost proposal does not provide a cost estimate for providing it. Similarly, Hallwood was responsible, under the terms of the SFO for obtaining all required permits from the city as part of the shell building. DPFUF ¶ 10. Indeed, all of the work now disputed was clearly required by the SFO. DPFUF ¶¶ 6-12. The "change order" Hallwood refers to was merely its own estimation of what it characterized as changes to the original requirements. Pl. Br. 23. The Government clearly disagreed with Hallwood's characterization, and communicated that disagreement promptly to Hallwood. DPFUF ¶ 24-25. The Government did not act in bad faith by holding Hallwood to the terms of the SFO, and refusing to pay additional costs for work that should have been provided in Hallwood's original cost estimate. The duty to cooperate "does not require the Government to do whatever a contractor demands . . . Rather, the obligation simply prohibits the Government from interfering with contract performance." Hercules, Inc. v. United States, 24 F.3d at 196.; Intercontinental Mfg. Co. v. United States, 4 Cl. Ct. 591, 599 (1984). Since Hallwood cannot establish that the Government acted to hinder its performance, this argument provides no basis for Hallwood's claim for equitable adjustment.

Hallwood made a proposal for the Tenant Improvements subsequent to being awarded the lease. The Government was entitled to rely on that proposal as Hallwood's informed estimate of how much it would cost to perform the work necessary. The Government made no representations about the existing conditions at the site, indeed, the site was owned by Hallwood Plaza, albeit newly acquired. As Hallwood's property, it had access to investigate and explore the premises at any time, or to request or insist that its subcontractor, Excel Construction do so. That it failed to do so, and therefore underestimated the amount of work required to meet the performance specifications of the lease, is its own mistake for which it must bear the costs.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant defendant's motion for summary judgment, and enter an order dismissing the complaint.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 30th day of January, 2008, the foregoing "DEFENDANT'S REPLY BRIEF", was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joan M. Stentiford
JOAN M. STENTIFORD